UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| W LYNN FRAZIER, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-10-4 |
| | § | |
| MAP OIL TOOLS, INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER

On this day came on to be considered Defendant Map Oil Tools Inc.'s Motion for Partial Summary Judgment. (D.E. 38.) For the reasons stated herein, Defendant's Motion for Partial Summary Judgment is GRANTED.

**I.  Jurisdiction**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338(a) (exclusive jurisdiction over patent cases).

**II.  Factual and Procedural Background**

On January 5, 2010, Plaintiff W. Lynn Frazier filed this patent infringement action under 35 U.S.C. § 271 against Defendant Map Oil Tools, Inc. (D.E. 1.) The relevant patent, U.S. Patent No. 6,796,376 ("'376 Patent"), was issued to Plaintiff Frazier on September 28, 2004. The '376 Patent has four separate claims.

On June 21, 2010 Defendant filed the Motion for Partial Summary Judgment presently before the Court. (D.E. 38.) Defendant seeks summary judgment on Claim 4 of the '376 Patent only. Plaintiff filed his Response on July 12, 2010. (D.E. 44.)

### III.     Discussion

#### A.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The substantive law identifies which facts are material.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

On summary judgment, "[t]he moving party has the burden of proving there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law." Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 246 (5th Cir. 2003); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "the non-moving party must show that summary judgment is inappropriate by setting forth specific facts showing the existence of a genuine issue concerning every essential component of its case." Rivera, 349 F.3d at 247.  The nonmovant "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); see also First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 270 (1968).  The nonmovant's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Willis v.

Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment").

Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the non-moving party, no reasonable jury could return a verdict for that party. Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000).

### B. '376 Patent, Claim 4

Defendant's Motion for Partial Summary Judgment seeks summary judgment as to Claim 4 of the '376 Patent. Claim 4 provides:

> A bridge plug comprising:
>
>> A mandrel having a longitudinal axis, an upper portion, a lower portion, a middle portion and an upwardly facing engaging portion in a set condition of the bridge plug for engaging a slot in a superposed bridge plug, the engaging portion comprising a torque transmitting connection
>>
>> **A head member attached to the lower portion of the mandrel having a slot for catchably retaining the engaging portion of a superposed bridge plug**
>>
>> An upper collar positioned about the upper portion of the mandrel
>>
>> At least one gripping member positioned about the middle portion of the mandrel
>>
>> At least one sealing member positioned about the middle portion of the mandrel and positioned between the head member and the at least one gripping member.

As described in Claim 4, the patented bridge plug is capable of attaching to other bridge plugs inside a wellbore. The bridge plugs can be arranged in a series, such that one bridge plug connects to another bridge plug located above or below it. At issue here is

the mechanism by which these bridge plugs connect. More specifically, paragraph 2 of Claim 4 is at issue, which provides that the bridge plug has "[a] head member attached to the lower portion of the mandrel having a slot for catchably retaining the engaging portion of a **superposed** bridge plug." The dispute turns entirely on the agreed definition of the term "superposed," which the Parties have agreed means "located above or over." (D.E. 26-1 at 1.) With "superposed" defined as "located above or over," the disputed section of Claim 4 is read to mean that one bridge plug has a slot on the head member attached to the lower end of the mandrel meant to retain the engaging portion of another bridge plug located *above* the first bridge plug. This configuration is not possible as written, as a bridge plug is simply not capable of using a slot at its bottom end to connect with another bridge plug positioned above it. Rather, this slot would be used to connect to another bridge plug located below it.

 1. **Arguments**

Based upon the usage of "superposed" in Claim 4, Defendant argues for dismissal on two bases. First, Defendant seeks summary judgment due to non-infringement, as the Defendant's plugs do not contain the limitation contained in Claim 4. As Defendant argues, "it is simply impossible for the slot in the first (lower) bridge plug to accomplish the gymnastic feat of mating with the engaging portion of a superposed bridge plug." (D.E. 38 at 8.) Because Defendant's bridge plugs have no feature that allows a bottom end of a lower bridge plug to catch an engaging portion of a bridge plug above it, Defendant's bridge plugs cannot infringe Claim 4. (D.E. 38 at 8-10.) Defendant argues that Plaintiff has implicitly acknowledged this error, as he sought to correct this problem by filing amended infringement contentions on May 27, 2010, in

which he substituted "subjacent" for "superposed," and states that a bridge plug connects to a "third, lower yet, plug."  (D.E. 38 at 10-12.)

Second, Defendant contends that Claim 4 is invalid under 35 U.S.C. § 112 and § 101.  Defendant, relying chiefly upon Chef America, Inc. v. Lamb-Weston, Inc., 358 F.3d 1371 (Fed. Cir. 2004), argues that this Court must construe the '376 Patent as written, and may not redraft Claim 4 to correct the error, namely by replacing "superposed" with "subjacent."  (D.E. 38 at 13-14.)

In response, Plaintiff argues inter alia that the use of "superposed" in Claim 4 is not in fact a mistake at all.  Plaintiff contends that "[o]ne with skill in the art would interpret Claim 4 to require a bridge plug capable of engaging two other bridge plugs, one above and one below, not the same, single superposed bridge plug as erroneously asserted by Defendants."  (D.E. 44 at 11.)   Plaintiff bases this interpretation upon the use of the article "a" twice in Claim 4, which Plaintiff claims demonstrates that "two bridge plugs were contemplated."  (D.E. 44 at 12.)  Plaintiff affirmatively states that he "is not asking this Court to rewrite any aspect of claim 4," and that he "merely requests that claim 4 be properly interpreted according to common sense, industry knowledge, and as the hypothetical one with skill in the art is deemed to do."  (D.E. 44 at 16-17.)  Plaintiff further states that he "is not suggesting and has never suggested that 'superposed' should be substituted with the term 'subjacent,'" and rather "simply requests common sense to be applied."  (D.E. 44 at 17.)  Based upon this interpretation, Plaintiff argues that Claim 4 is valid, and that Defendant's tool infringes this Claim.  (D.E. 44 at 17-26.)

### 2.     Analysis

At a fundamental level, both parties agree that the head member of the bridge plug attached to the lower portion of the mandrel contains a slot that is meant to "catchably retain the engaging portion" of another bridge plug that is located beneath the first one, not above it.  Both parties also agree that it would not be possible for the lower end of one bridge plug to connect with another bridge plug located *above* the first.  The dispute between the parties instead focuses on whether Claim 4 of the '376 Patent actually describes the proper end-to-end bridge plug arrangement (upper bridge plug connecting to a lower bridge plug) when it uses the term "superposed."  Defendant argues that it does not, and "subjacent" was likely the intended term.  Defendant contends, however, that the Court lacks the authority to change "superposed" to "subjacent."  Plaintiff in contrast argues that Claim 4 contains no mistake at all, and somehow the use of "superposed," which the parties agree means "located above or over," should be interpreted to refer to a *lower* bridge plug, when that is in fact the opposite of the agreed definition.

As an initial matter, the Court rejects Plaintiff's strained and entirely unpersuasive attempt to reinterpret Claim 4.  The parties have agreed that "superposed" means "located above or over," and the only possible (albeit nonsensical) way to read Claim 4, Paragraph 2, is that the lower end of one bridge plug attaches to the end of another bridge plug located above the first.  The Court further concludes that the term "superposed" in paragraph 2 of Claim 4 should in fact read "subjacent," to properly refer to a lower bridge plug, attached to the bottom of a first bridge plug.  In other words, the use of "superposed" in paragraph 2 is an error, the origin of which is not clear.

In light of the conclusion that Claim 4 contains an error (and is nonsensical as written), the question then is whether this Court has the authority to correct the error by replacing "superposed" with "subjacent."  As noted above, Defendant has argued that the Court lacks this authority, based upon <u>Chef America</u>.  In that case, the patentee, Chef America, sued Lamb-Weston for infringement of a product used to make dough light and flaky.  One of the patent claims required "heating the resulting batter-coated dough to a temperature in the range of 400 to 850 F."  Defendant moved for summary judgment on grounds of non-infringement, arguing that heating to that range would burn the dough, not make it light and flaky.  The district court granted summary judgment, rejecting Plaintiff's argument that the court should interpret the claim to state "at a temperature" instead of "to a temperature."  The Federal Circuit affirmed, explaining:

> This court . . . repeatedly and consistently has recognized that courts may not redraft claims, whether to make them operable or to sustain their validity. Even a nonsensical result does not require the court to redraft the claims of the patent. Rather, where as here, claims are susceptible to only one reasonable interpretation and that interpretation results in a nonsensical construction of the claim as a whole, the claim must be invalidated. Where, as here, the claim is susceptible to only one reasonable construction, the canons of claim construction cited by [Chef America] are inapposite, and we must construe the claims based on the patentee's version of the claim as he himself drafted it.

358 F.3d at 1374 (internal citations and quotation marks omitted).  The court also noted that "the prosecution history suggests that the patentees intentionally used 'to' rather than 'at' in drafting the temperature requirements of the claim." 358 F.3d at 1374.

The Federal Circuit has stated, however, that courts have the authority to correct certain types of patent errors, sometimes referred to as "<u>Essex</u> errors," after <u>I.T.S. Rubber Co. v. Essex Rubber Co.</u>, 272 U.S. 429 (1926).  The Federal Circuit has explained:

> We have held that **"[a] district court can correct a patent only if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims**." Novo Indus., L.P. v. Micro Molds Corp., 350 F.3d 1348, 1357 (Fed. Cir. 2003). Those determinations must be made from the point of view of one skilled in the art. "Claim definiteness is analyzed not in a vacuum, but always in light of the teachings of the prior art and of the particular application disclosure as it would be interpreted by one possessing the ordinary level of skill in the pertinent art." Energizer Holdings v. Int'l Trade Comm', 435 F.3d 1366, 1370 (Fed. Cir. 2006) (quotation marks omitted). **Thus, although courts cannot "rewrite claims to correct material errors," id., if the correction is not subject to reasonable debate to one of ordinary skill in the art, namely, through claim language and the specification, and the prosecution history does not suggest a different interpretation, then a court can correct an obvious typographical error.**

Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp., 587 F.3d 1339, 1353 (Fed. Cir. 2009) (emphasis added). Thus, in Ultimax, the Federal Circuit corrected "a possible drafting error in the . . . patent [at issue], namely, that there should be a comma between the symbols for fluorine and chlorine [in the patent]." The court explained, "the claimed formula C9S3S3Ca(f cl)2 'corresponds to no known mineral,' and . . . one of ordinary skill in the art would know that the formula should contain a comma." 587 F.3d at 1353. The rule announced in Novo and Ultimax applies to errors that are apparent from the face of the patent. 350 F.3d at 1357 ("The present case does not fall within the ambit of the district court's authority, for the nature of the error is not apparent from the face of the patent."); see also Hoffer v. Microsoft Corp., 405 F.3d 1326, 1331 (Fed. Cir. 2005) ("The district court held that it has no authority to correct or ignore even a typographical error in a patent. That is inaccurate. When a harmless error in a patent is not subject to reasonable debate, it can be corrected by the court, as for other legal documents. Here the

error was apparent from the face of the patent, and that view is not contradicted by the prosecution history.") (citing Novo).

Despite this Court's authority under Novo and Ultimax to correct certain obvious errors in a patent, the Court is precluded from doing so in this case for two reasons. First, although both Defendant and this Court believe that Claim 4 contains an error, Plaintiff has in fact argued that Claim 4 contains no mistake at all. (D.E. 44 at 13 ("Indeed, the plain meaning of 'superposed,' as the parties have agreed, means 'above or on.' With this definition in mind, the meaning of claim 4 is quite clear."); July 13, 2010 Hearing at 1:16:33 ("We don't think there's really a mistake there.").) It is not possible for this Court to apply a principle meant to correct obvious patent errors when the patentee himself has argued that no such error exists. Second, even if the Court concludes that an error exists notwithstanding Plaintiff's claims to the contrary, the Court cannot conclude that the "correction is not subject to reasonable debate based on consideration of the claim language and the specification," Ultimax, 587 F.3d at 1353, because Plaintiff himself argues against any correction. (See, e.g., D.E. 44 at 16 ("Plaintiff is not asking this Court to rewrite any aspect of Claim 4."); D.E. 44 at 15 ("Claim 4 . . . easily lends itself to a logical interpretation, without rewriting a single word in the claim."; D.E. 44 at 17 ("Plaintiff is not suggesting and has never suggested that 'superposed' should be substituted with the term 'subjacent.'"); July 13, 2010 Hearing at 1:16:33 ("We don't think there's really a mistake there."); 1:20:10 ("I would like to tell you that it's a typo, but I just don't know if it was or not.").)[1] Simply put, this Court will not employ its limited power to correct a patent that Plaintiff himself argues should not be corrected.

---

[1] Although Plaintiff later asserted during oral argument that "if you're willing to do that for me [change 'superposed' to 'subjacent'], I'm more than happy to, and we would agree to that." (July 13, 2010 Hearing

As such, Plaintiff is left with an illogical Claim 4. With no way for the bottom end of one bridge plug to connect with a bridge plug located *above* it, Claim 4 is nonsensical. This nonsensical interpretation of Claim 4 leads to the conclusion that Defendant's Motion for Partial Summary Judgment on Claim 4 must be granted on the grounds that Defendant's tool does not infringe Claim 4, and that Claim 4 is invalid under 35 U.S.C. §§ 101 and 112.

### a. Non-Infringement

As an initial matter, it is readily apparent that Defendant's bridge plugs cannot infringe Claim 4 because the lower portions of Defendant's tools are capable only of attaching to another bridge plug located below them. Claim 4, read literally, would be infringed only by a bridge plug with a bottom portion capable of engaging with another bridge plug located above it. Such is clearly not the case with Defendant's bridge plug, nor is it physically possible in any bridge plug, as both sides agree. (See D.E. 38 at 8 ("[T]his language from claim 4 specifies a configuration that is simply impossible . . . ."); D.E. 44 at 15 ("One of ordinary skill in the art would know that two ends of one bridge plug could never engage the same, superposed bridge plug. That is just physically impossible and logically reprehensible.").) Because Plaintiff has declined to argue that the term "superposed" in Claim 4 should instead read "subjacent," the Court must read Claim 4 as written, with the agreed definition of "superposed," and conclude that Defendant's bridge plug does not and cannot infringe this Claim.

---

at 1:21:20), the Court cannot ignore Plaintiff's other statements in his briefing and at oral arguments that clearly deny the existence of a mistake. The Court's power to correct errors is quite limited, as discussed above, and does not allow for corrections where the patentee himself disputes whether such a correction is actually necessary.

In addition to concluding that Defendant's tools do not infringe Claim 4, the Court also concludes that Claim 4 is invalid under 35 U.S.C. § 101 and 112.

### b. Invalidity under 35 U.S.C. § 112

Title 35, Section 112 provides in relevant part:

> [t]he specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.
>
> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

35 U.S.C. § 112. As the Federal Circuit has explained, Section 112, paragraph one "contains two separate description requirements: a 'written description [i] of the invention, and [ii] of the manner and process of making and using [the invention']." Ariad Pharmaceuticals, Inc. v. Eli Lilly and Co., 598 F.3d 1336, 1344 (Fed. Cir. 2010). The Federal Circuit recognizes in Section 112 a "written description requirement separate from an enablement requirement." Id. at 1345.

The "written description" requirement "serves a teaching function, as a quid pro quo in which the public is given meaningful disclosure in exchange for being excluded from practicing the invention for a limited period of time." Univ. of Rochester v. G.D. Searle & Co, Inc., 358 F.3d 916, 922 (Fed. Cir. 2004) (citing Enzo Biochem, Inc. v. Gen-Probe Inc., 323 F.3d 956, 970 (Fed. Cir. 2002)) (internal quotation marks omitted). The written description must "clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed. In other words, the test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled

in the art that the inventor had possession of the claimed subject matter as of the filing date." Ariad, 598 F.3d at 1351 (internal citations omitted).

The "enablement" requirement "is satisfied when one skilled in the art, after reading the specification, could practice the claimed invention without undue experimentation." AK Steel Corp. v. Sollac and Ugine, 344 F.3d 1234, 1244 (Fed. Cir. 2003). "Enablement is determined as of the effective filing date of the patent's application." ALZA Corp. v. Andrx Pharmaceuticals, LLC, 603 F.3d 935, 940 (Fed. Cir. 2010). "Because patents are presumed valid, lack of enablement must be proven by clear and convincing evidence." Id.

Here, both the written description and the enablement requirement of Section 112 fail to be satisfied. Considering first the written description requirement, the tool described in Claim 4 appears nowhere in the specification. With Claim 4 written as is, the specification would have to describe a bridge plug that has a lower end capable of engaging another bridge plug located above it. Instead, the specification describes what one would expect to find, namely a bridge plug with an engaging portion at an end that is capable of connecting with another bridge plug positioned adjacent to that end. (D.E. 36-1 ('376 Patent) at 3:22-26 ("An engaging portion surrounds the shear portion adjacent to the upper collar that is engageable with a lower slot within a head member of a higher bridge plug thereby preventing rotation of the higher bridge plug during drilling thereof.").) Because Claim 4 is not described anywhere in the specification (due to the use of "superposed" instead of "subjacent"), it necessarily fails the written description requirement of Section 112.

Considering next the enablement requirement, the Federal Circuit has explained, "[b]ecause it is for the invention as claimed that enablement must clearly exist, and because the impossible cannot be enabled, a claim containing a limitation impossible to meet may be held invalid under § 112." Raytheon Co. v. Roper Corp., 724 F.2d 951, 956 (Fed. Cir. 1983). In other words, "when an impossible limitation, such as a nonsensical method of operation, is clearly embodied within the claim, the claimed invention must be held invalid. . . . . [W]hen the claimed subject matter is inoperable, the patent may indeed be invalid for failure to meet the utility requirement of § 101 and the enablement requirement of § 112." Process Control Corp. v. HydReclaim Corp., 190 F.3d 1350, 1359 (Fed. Cir. 1999) (internal quotation marks omitted). Thus, in Process Control Corp., the court found that the patent at issue was invalid due to a definition of the term "discharge rate," which "embodie[d] an inoperable method that violates the principle of conservation of mass." 190 F.3d at 1359. The court held that "the correctly construed claims [were] invalid because they [were] inoperative, and thus the claims fail[ed] to comply with the utility and enablement requirements of 35 U.S.C. § 101 and 112, ¶ 1, respectively." Id. The same situation exists here. Based upon the agreed definition of "superposed," Claim 4 as written is nonsensical and inoperable, as discussed above. Under Process Control Corp., Claim 4 is therefore invalid pursuant to the embodiment requirement of Section 112.

Finally, Claim 4 is also invalid under paragraph 2 of Section 112, which provides, "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112. "Where it would be apparent to one of skill in the art, based on the

specification, that the invention set forth in a claim is not what the patentee regarded as his invention, we must hold that claim invalid under § 112, paragraph 2." Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 1348 (Fed. Cir. 2002). For the reasons discussed above, the bridge plug as described in the specification of the '376 Patent differs materially from that described in Claim 4. Thus, due to the use of "superposed" rather than "subjacent," Claim 4 is invalid under paragraph 2 of Section 112.

### c.    Invalidity under 35 U.S.C. § 101

A patent may be invalid for lack of utility pursuant to 35 U.S.C. § 101. Section 101 provides "[w]hoever invents or discovers any new and **useful process**, machine, manufacture, or composition of matter, or any new and **useful improvement thereof**, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101 (emphasis added); see, e.g., In re '318 Patent Infringement Litig., 583 F.3d 1317, 1323-24 (Fed. Cir. 2009) (discussing utility requirement). The utility requirement "mandates that any patentable invention be useful and, accordingly, the subject matter of the claim must be operable." Process Control Corp., 190 F.3d at 1358. The utility and enablement requirements are closely related. Ariad, 598 F.3d at 1368.

As noted above, "[w]hen an impossible limitation, such as a nonsensical method of operation, is clearly embodied within the claim, the claimed invention must be held invalid. . . . [W]hen the claimed subject matter is inoperable, the patent may indeed be invalid for failure to meet the utility requirement of § 101 and the enablement requirement of § 112." Process Control Corp., 190 F.3d at 1359 (quotation marks omitted). In this case, the bridge plug as described in Claim 4 is nonsensical for the

reasons stated above. As such, Claim 4 does not comply with the utility requirement of Section 101, and is invalid on that basis as well.

In sum, the Court concludes that Claim 4 of the '376 Patent is invalid under 35 U.S.C. §§ 101 and 112.

### IV.    Conclusion

For the reasons stated above, the Court GRANTS Defendant's Motion for Partial Summary Judgment as to Claim 4 of the '376 Patent. (D.E. 38.) The Court finds that Defendant's bridge plugs at issue in this litigation do not infringe Claim 4 of the '376 Patent, and that Claim 4 is invalid under 35 U.S.C. §§ 101, 112.

SIGNED and ORDERED this 16th day of July, 2010.

_____
Janis Graham Jack
United States District Judge